UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

TROY A. H.,[1]

                     Plaintiff,

v.

COMMISIONER OF SOCIAL SECURITY,

                     Defendant.

Case No.: 6:20-cv-01228-YY

OPINION AND ORDER

YOU, Magistrate Judge.

      Plaintiff Troy H. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3).[2] For the reasons set forth below, that decision is REVERSED and REMANDED for immediate payment of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and last initial of the non-governmental party or parties in this case.
[2] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff originally filed for DIB and SSI on November 12, 2017, alleging disability beginning August 28, 2017.  Tr.  His applications were denied initially on January 22, 2018, and upon reconsideration on May 21, 2018.  Tr. 125-133, 137-142.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on June 27, 2019.  Plaintiff testified, as did a vocational expert ("VE").  Tr. 35-72.  On August 5, 2019, the ALJ issued an "unfavorable" decision, finding plaintiff not disabled within the meaning of the Act.  Tr. 17-29.  The Appeals Council denied plaintiff's application for review on May 21, 2020, making the ALJ's decision the final decision of the Commissioner.  Tr. 6-8.  Plaintiff timely filed this request for district court review.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

2 – OPINION AND ORDER

## SEQUENTIAL ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, August 28, 2017. Tr. 22. At step two, the ALJ found plaintiff had severe impairments of ulcerative colitis, central pain syndrome, panic disorder, generalized anxiety disorder. and post-traumatic stress disorder ("PTSD"). Tr. 23. The ALJ noted that the record included evidence of glaucoma, but determined this condition was non-severe. *Id*.

At step three, the ALJ determined plaintiff did not suffer from an impairment or combination of impairments that met or medically equaled a listed impairment. *Id*. Next, the ALJ assessed plaintiff's residual functional capacity ("RFC") and determined he could perform "a range of light work as defined in 20 CFR 404.4567(b) and 416.967(b) except he must avoid crawling or climbing ladders, ropes, or scaffolds. He must also avoid exposure to vibration or workplace hazards (including unprotected heights and dangerous machinery). His worksite must provide access to a restroom. He can tolerate occasional interaction with co-workers and supervisors, but he must avoid interaction with the public." Tr. 24.

At step four, the ALJ found plaintiff incapable of performing past relevant work. Tr. 27.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, plaintiff could perform jobs that exist in significant numbers in the nation economy, such as marker, routing clerk, and router. Tr. 27-28. Thus, the ALJ conclude plaintiff was not disabled. Tr. 28.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) improperly discounting his subjective symptom testimony related to ulcerative colitis; and (2) erroneously rejecting medical opinion evidence.

## I. Subjective Symptom Testimony

### A. Function Report

Plaintiff completed a function report on December 3, 2017. Tr. 260-67. As relevant to his ulcerative colitis symptoms, he stated that his ability work was limited by frequent trips to the restroom, accidents, pain, and feeling sick. Tr. 206. He stated that he makes at least six trips to the restroom upon waking in the morning and frequent trips throughout the day. Tr. 261. His symptoms also caused him to wake up frequently to use the restroom. *Id*. Plaintiff stated that he brings an extra change of clothes with him if goes anywhere, and that he needs to change clothes throughout the day. Tr. 262.

### B. Hearing Testimony

At the hearing, plaintiff testified that he left his parks maintenance job because he had to go to the bathroom constantly and needed to take breaks, rendering him unable to perform the job as required. Tr. 41-42, 51. He testified that he needed to be close to a bathroom all the time, having urgent gastrointestinal events every hour to half hour throughout the day. Tr. 43. He testified that even when he had some relief from a new medication, he still needed to use the restroom frequently on a daily basis. Tr. 44. Regarding treatment, he testified that, "when I go

on a new medication for some reason I start getting better. And then for some reason, it would just stop working." *Id*.

      **C.**     **Relevant Law**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and

other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

### D. Analysis

#### 1. Medication Issues

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." Tr. 25.

The ALJ noted that in his initial applications for SSI and DIB, plaintiff stated that he suffered from chronic pain and gastrointestinal symptoms from ulcerative colitis, necessitating frequent trips to the restroom, and that he was not always able to make it on time. Tr.25. The ALJ also noted that plaintiff alleged "his symptoms caused him pain, anxiety, sleep disturbance, and lapses in concentration," and that plaintiff reiterated these claims at the hearing, explaining "that his pain and gastrointestinal problems forced him to leave the workforce before his employer could fire him for poor performance." *Id*.

In discrediting the severity of plaintiff's ulcerative colitis symptoms, the ALJ pointed to a medical exam "contemporaneous to the alleged onset date," during which, according to the ALJ, plaintiff "acknowledged that pain medication mitigated his abdominal symptoms and controlled his diarrhea." *Id*. "Impairments that can be controlled effectively with medication are not disabling" under the Act. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted). That plaintiff's symptoms were controlled by medication, however, is belied by the record.

On August 16, 2017, plaintiff was seen by David Long, M.D. for the first and only time. Tr. 454-58. The purpose of the exam was to seek a refill of his Percocet prescription. Tr. 454. According to the chart notes, plaintiff stated he was no longer taking the medication prescribed by his gastroenterologist for ulcerative colitis because he could not afford the medication. *Id*. Instead, plaintiff "uses high dose Percocet which he says helps his abdominal pain and controls his diarrhea." *Id*. Dr. Long also noted that plaintiff took Percocet for left leg and right shoulder pain. *Id*. The review of symptoms noted chronic abdominal pain with loose stools, and right shoulder and left leg pain. Tr. 456. On physical exam, Dr. Long noted plaintiff was not in acute distress; his abdominal exam was Blumberg sign[3] positive, but otherwise no abnormal findings were noted. Tr. 457. The bulk of the treatment notes from this visit document Dr. Long's discomfort with plaintiff's long-term Percocet use to treat his ulcerative colitis and other pain symptoms. Noting that plaintiff was moving from the area and that he had an appointment with a pain clinic in two weeks, Dr. Long recommended plaintiff follow-up with a gastroenterologist "since he could not afford medication and has failed everything else." Tr. 457. Although Dr. Long noted plaintiff used Percocet to help with his abdominal pain and "control" his diarrhea, plaintiff's subsequent treatment history shows that his diarrhea was not controlled and that he still suffered abdominal pain.[4]

On August 28, 2017, plaintiff underwent his initial pain clinic exam. Tr. 470-72. As relevant to his ulcerative colitis symptoms, plaintiff endorsed abdominal pain, incontinence,

---

[3] Blumberg sign is "pain experienced on sudden release of steadily applied pressure on a suspected area of the abdomen." Stedman's Medical Dictionary, 1767 sign, Blumberg, (28th ed. 2006).
[4] Notably, plaintiff visited Dr. Long right around the time quit his job due to pain and frequent urgent bathroom trips despite taking Percocet. Tr. 51, 376. This is yet another indication that his symptoms were not controlled by medication.

7 – OPINION AND ORDER

diarrhea, and bleeding. Tr. 470. Plaintiff reported that his ulcerative colitis had flared up recently and that this was causing increased pain. Tr. 471. On physical exam, his abdomen was tender to light palpation. *Id*. On subsequent exams, plaintiff continued to endorse symptoms of diarrhea and abdominal pain (Tr. 468, 479, 730, 733, 736, 739, 741), and exhibit abdominal tenderness to palpation on physical exam (Tr. 480, 482, 736, 739).

In November 2017, plaintiff sought a referral to a gastroenterologist and was placed on a prednisone taper to address his ulcerative colitis symptoms. Tr. 569. He rated his abdominal pain as a 6/10. *Id.* In December 2017, plaintiff established care with a gastroenterology practice, complaining of daily bloody mucousy stools occurring at least six times per day and lower abdominal discomfort. Tr. 572. Plaintiff reported that the prednisone was not as effective as it had been in the past. *Id*. In January 2018, plaintiff underwent a colonoscopy, confirming moderate left-sided ulcerative colitis and revealing seven polyps that were removed and biopsied.[5] Tr. 500. The biopsies were consistent with moderate to severe chronic colitis. Tr. 504. In March 2018, plaintiff established care with a new primary care doctor. He endorsed abdominal pain, diarrhea, and blood in his stool. Tr. 587. On physical exam, he exhibited soft but mild abdominal distension, and tenderness. *Id*. At a follow-up gastroenterology visit in July 2018, plaintiff reported he was compliant with his new treatment but nonetheless continued to suffer abdominal pain and frequent bloody stools, with six or more bowel movements per day. Tr. 703. On physical exam, he exhibited abdominal tenderness to palpation. Tr. 705. In September 2018, plaintiff reported less frequent and severe abdominal pain, and frequent but less bloody bowel movements. Tr. 691. In January 2019, however, plaintiff reported increased

---

[5] The record indicates plaintiff was first diagnosed with ulcerative colitis by colonoscopy in 2009. Tr. 444, 681.

8 – OPINION AND ORDER

frequency of mucousy bowel movements with intermittent bleeding and intermittent abdominal pain throughout the day and night. Tr. 680. On physical exam, he appeared fatigued and his abdomen was tender. Tr. 682.

Thus, the record reflects plaintiff made consistent complaints of abdominal pain with frequent bowel movements often characterized as bloody or mucousy stools, accompanied by objective physical exam findings of abdominal tenderness, and a colonoscopy confirming moderate to severe ulcerative colitis. The ALJ's rationale for discrediting plaintiff's subjective symptom testimony based up control by medication is not supported by substantial evidence.

The ALJ attributed plaintiff's documented complaints of persistent bloody diarrhea and lower abdominal discomfort in early 2018 to plaintiff's decision to cease medications due to cost, finding that "within months of resuming medication, the claimant reportedly presented as 'pleasant,' well-nourished, and in no acute distress – prompting his treatment provider to wonder if a therapeutic dosage had not already been achieved." Tr. 26.

This, however, mischaracterizes plaintiff's presentation that day, ignoring treatment notes where plaintiff reported frequent bloody stools, abdominal pain, and exhibited abdominal tenderness to palpation on exam. Tr. 703-05; *see Holohan v. Massanari*, 246 F.3d 1195, 1207 (ALJ erred by selectively relying on evidence reflecting improvement, while ignoring evidence of continued severe impairment). It also mischaracterizes the doctor's chart note which, in its entirety, stated, "Unclear if therapeutic dose not achieved with current dosing or perhaps developed antibodies. Will obtain updated fecal calprotectin and Anser ADA assay for drug level and antibodies. Pending findings, may consider dose adjustment[,] adjuvant therapy[,] or alternative biologic trial." Tr. 705. Viewing at the entire record of the encounter, it's clear that the doctor was not convinced plaintiff's ulcerative colitis was effectively being controlled with

the current medication regime. Indeed, while the record showed some improvement in September 2018, his symptoms had worsened again by January 2019, prompting a referral for additional laboratory and imaging tests, and a discussion about alternative therapies. Tr. 691, 682-83. Accordingly, substantial evidence does not support the ALJ's rationale that plaintiff's symptoms improved with or were controlled by medication.

Benefits may not be denied because a claimant cannot afford the treatment. *Warre,* 439 F.3d at 1006. Thus, to the extent the ALJ found plaintiff's ulcerative colitis symptoms persisted because he failed to take medication he could not afford, this is error. In August 2017, plaintiff told Dr. Long that he could not afford the medication prescribed for him by his gastroenterologist (Tr. 454) and in January 2018, plaintiff related to his new gastroenterology clinic that he had been placed on Golimumab for three months but ceased its use due to cost and a feeling that it did not offer any symptom relief. Tr. 500. Accordingly, plaintiff's failure to take medication he could not afford and that did not offer adequate symptom relief is not a clear and convincing reason to discredit his symptom testimony. *See also Smolen*, 80 F.3d at 1284 ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so.").

### 2.     Objective Medical Evidence

The ALJ relied on chart notes indicating "no acute distress" to discredit plaintiff's chronic symptom testimony. As plaintiff points out, the term "acute" in the medical context refers to "a health effect, usually of rapid onset, brief, not prolonged." Stedman's Medical Dictionary, acute 23 (28th ed. 2006). Thus, it is questionable whether a chart note of "no acute distress" is relevant to allegations of chronic symptoms. *See, e.g., Mitchell v. Saul*, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020), *report and recommendation adopted sub nom. Mitchell*

*v. Berryhill*, 2020 WL 1017899 (D. Nev. Feb. 28, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."); *Richard F. v. Comm'r of Soc. Sec.*, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony. 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute." (citation to the administrative record omitted)). While an ALJ may consider a lack of "acute" distress when assessing a claimant's symptom allegations, the ALJ must also consider the record as a whole and may not cherry-pick evidence to show a claimant is not disabled. *Holoham*, 246 F.3d at 1207. Here, the ALJ selectively relied upon notes indicating "no acute distress" while ignoring plaintiff's subjective complaints of pain and gastrointestinal distress accompanied by objective exam findings of abdominal tenderness within the same exam. Tr. 456-57, 691-93. Accordingly, considering the record as whole, the absence of "acute distress" is not a clear and convincing reason to discredit plaintiff's chronic symptom testimony.

In sum, the ALJ's rationales for rejecting plaintiff's symptom testimony based on lack of objective corroboration and effective management with medication do not meet the clear and convincing reason standard.

## II.    Medical Opinion Evidence

### A.    Relevant Law

Plaintiff filed his application for benefits on November 12, 2017. Tr. 15. For claims filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c govern how ALJs must evaluate medical opinion evidence under Title II. *Revisions to Rules Regarding the Evaluation of*

11 – OPINION AND ORDER

*Medical Evidence* (*Revisions to Rules*), 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017). ALJs no longer "weigh" medical opinions but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(c). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of all medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c)(1)-(5); 20 C.F.R. § 416.920c(a), (c)(1)-(5). The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The new regulations require the ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(a), (b); 20 C.F.R § 416.920c(a),(b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more

medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

The court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

B.    Whether the "Specific and Legitimate" Standard Still Applies

As an initial matter, the parties disagree about the relevance of Ninth Circuit case law in light of the amended regulations. Specifically, the parties dispute whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician. *Compare* Pl. Br. 13 *with* Def. Br. 11. The Commissioner argues that the court must affirm the ALJ's rejection of a medical source opinion if the ALJ's rationale is supported by substantial evidence. Def. Br. 11.

Under current Ninth Circuit law, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor and "specific and legitimate" reasons to reject a contradicted opinion from such doctor. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The regulations pertaining to applications filed before March 27, 2017, set out a hierarchy for treatment of opinion evidence that, consistent with Ninth Circuit case law, gives treating sources more weight than non-treating sources, and examining sources more weight than non-examining sources. *See Standards for Consultative Examinations and Existing Medical Evidence*, 56 Fed. Reg. 36,932, *available at* 1991 WL 142361 (Aug. 1, 1991);

13 – OPINION AND ORDER

*Magallanes*, 881 F.2d at 751 (adopting the "clear and convincing" and "specific and legitimate" standards for rejecting treating and examining source medical opinions); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (holding that "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record).

The Ninth Circuit has not yet considered whether the revision of the 2017 regulations requires re-evaluation of the "specific and legitimate" standard for review of medical opinions. *See Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting cases). Nevertheless, "[e]ven under the Commissioner's new regulations, the ALJ must articulate why he has rejected the opinion" and "the Ninth Circuit's 'specific and legitimate standard' is merely a benchmark against which the Court evaluates that reasoning." *Scott D. v. Comm'r Soc. Sec.*, No. C20-5354 RAJ, 2021 WL 71679, at *4 (W.D. Wash. Jan. 8, 2021); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The court therefore considers whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of the providers' opinions.

    **C.**    **Opinion of Jarod Smith, A.R.N.P., F.N.P.-C and Patrick Rask, M.D.**

In June 2019, plaintiff's pain clinic providers, Nurse Smith and Dr. Rask, submitted a letter on plaintiff's behalf, noting that they had been treating plaintiff every month to every-other-month since August 2017. Tr. 747. They stated that they treated plaintiff for pain related to myalgias, central pain syndrome, and ulcerative colitis, and that his primary symptoms were muscle pains, fatigue, abdominal pain, bloody stools, and weakness. *Id*. They noted that plaintiff was currently being treated with oxycodone, amitriptyline, diclofenac gel, tizanidine, and lidocaine patches and that "[t]hese medications come with a sizeable side effect profile that

may impact [plaintiff's] ability to work." *Id*. At that time, however, "no side effects have been identified to necessitate treatment cessation." *Id*. They opined that during an eight-hour workday, plaintiff would "need to lie down and take a break multiple times during the day due to the severity of abdominal pain. Most likely these instances would be 15-30 minutes in duration." *Id*. They also opined that plaintiff would likely miss two or more days of work per month due to ulcerative colitis symptoms, depending on flares and the amount and frequency of loose bloody stools. *Id*.

The ALJ found Nurse Smith's and Dr. Rask's opinion regarding absenteeism resulting from ulcerative colitis symptoms to be inconsistent with the medical records and unpersuasive. Tr. 26. Specifically, the ALJ found:

> Mr. Smith's treatment notes … fail to corroborate the claimant's recurrent complaints of pain and gastrointestinal symptoms (See Exhibits 4F, 12F, and 16F). The treatment provider's most recent observations from early 2019 describe a "minimally" antalgic gait with no deficits in motor strength (Ex. 12F, 2). The claimant was reportedly fully awake, alert, and "talkative" with normal affect and memory (Id.) Such findings do not reasonably support the notion that the claimant would miss at least 2 days of work each month. It appears that the claimant's treatment providers have instead uncritically relied on his subjective complaints.

Tr. 27.

As an initial matter, it is unclear how observations regarding gait and demeanor undermine the medical providers' opinion about absenteeism caused by ulcerative colitis symptoms. Regardless, the ALJ cites treatment records documenting ten visits with the pain clinic beginning in August 2017 and ending in January 2019. In all visits but one (Tr. 466-67), the chart notes reflect plaintiff continued to report ulcerative colitis symptoms, including endorsing diarrhea and abdominal pain (Tr. 470-71, 468-69, 482, 479, 736-37, 733-34, 730-31, 727-29). In seven of the ten visits, the abdominal exam was deferred, with notations in at least

15 – OPINION AND ORDER

two instances indicating the deferral was related to plaintiff's condition ("The pt is having colitis related issues" (Tr. 482-83); "Sits in guarding position. Palpation deferred" (Tr. 728)). In the remaining visits, plaintiff exhibited tenderness on abdominal palpation. Tr. 471; 480 ("guards abdomen, tender to light palpation x 4 quads."); 737 ("Tenderness x 4 quadrants."). Thus, the treatment records reflect regular discussion of plaintiff's ulcerative colitis symptoms with some corroborating observations and physical exams.

An ALJ may reject a medical source opinion if that the opinion is premised on the claimant's subjective complaints properly discredited by the ALJ. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). As noted above, however, the ALJ did not properly discredit plaintiff's ulcerative colitis symptom testimony. Thus, even assuming Nurse Smith's and Dr. Rask's opinion regarding absenteeism was based solely upon plaintiff's subjective ulcerative colitis complaints, the ALJ failed to provide a specific and legitimate reason to reject that opinion. Moreover, the record reflects that plaintiff reported the same gastrointestinal symptoms across providers, including his gastroenterologists, and there is no indication that any of his medical providers discredited his accounts. *See also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."). The ALJ's rationale for rejecting the providers' opinion does not rise to the specific-and-legitimate standard.

**III.    Credit as True Analysis**

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or

without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

As discussed above, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for disregarding both plaintiff's subjective symptom testimony and the opinion of Nurse Smith and Dr. Rask.

At the next step, the court must decide whether the record is fully developed, free from conflicts and ambiguity, with all essential factual issues resolved. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1101). In arguing that further proceedings are warranted, the Commissioner merely reiterates that the ALJ's reasoning was sound, but even if the ALJ erred, the whole record creates serious doubt as to whether plaintiff is disabled. Def. Br. 13.

However, at the hearing, the VE opined that an individual who missed more than one day of work per month on an ongoing basis would not be able to maintain employment. Tr. 69-70. Likewise, the VE opined that no more than 30 minutes of off-task behavior, such as going to the bathroom outside of break times, is generally tolerated in the workplace. *Id.* Accordingly, if

17 – OPINION AND ORDER

Nurse Smith's and Dr. Rask's opinion regarding absenteeism is credited a true, plaintiff would not be able to maintain employment and a finding of disability would be required. In his function report and testimony, plaintiff stated that he needs to make frequent trips to the restroom throughout the day. Tr. 43-44, Tr. 256, 261. If plaintiff's symptom testimony regarding the frequency of his need to use the restroom throughout the day is credited as true, he would exceed employer tolerances for off-task behavior and would not be able to maintain employment; a finding of disability would be required. Accordingly, credit-as-true analysis mandates remand for an award of benefits.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED for immediate calculation and payment of benefits pursuant to sentence four of 42 USC § 405(g).

DATED February 4, 2022.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

18 – OPINION AND ORDER